# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| ROSLYN BANKHEAD, *et al.*, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>NORFOLK SOUTHERN )<br>RAILWAY COMPANY, *et al.*, )<br>)<br>Defendants. ) | 6:20-cv-00690-LSC |

## MEMORANDUM OF OPINION

Before the Court is Defendants Norfolk Southern Railway Company and Norfolk Southern Corporation's (collectively "Norfolk Southern") Motion to Dismiss.[1] (Doc. 5.) Plaintiffs originally filed this action in state court, alleging claims for nuisance, trespass, negligence, wantonness, and conspiracy. Norfolk Southern removed the action to this Court, arguing that Plaintiffs' claims are completely preempted by the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 *et seq.*, ("ICCTA"), or alternatively that removal was proper based upon diversity jurisdiction.

---

[1] Norfolk Southern's motion alternatively sought to stay the action for referral to the Surface Transportation Board. This alternative request has since been withdrawn. (*See* doc. 22.)

The motion is fully briefed and ripe for decision. For the reasons stated below, the motion is due to be granted.

I.   **Background**[2]

Norfolk Southern is a common carrier railway which engages in the business of transporting sewage sludge, chemical waste, sewage, bio-solids, and other waste materials from New York and New Jersey to Alabama for profit. Beginning as early as March 2017, Norfolk Southern began transporting this waste to Big Sky, who operates a solid waste facility located in Jefferson County, Alabama. Beginning in either late February or early March 2018, Norfolk Southern began staging railcars carrying this waste at the company's railyard in Parrish. Such materials remained at the Parrish railyard until April 18, 2018. The railcars emitted a strong and obnoxious odor, and Plaintiffs allege that Norfolk Southern knew they would before it decided to store them within the Parrish neighborhood. During this period, approximately 252 railcars containing waste were staged within Parrish, fueling a stench which permeated the neighborhood and significantly interfered with Plaintiffs' use and enjoyment of their properties. In addition, the foul odor caused an infestation of flies

---

[2]   In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and construe[s] the facts in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). Therefore, the following facts are taken from Plaintiffs' complaint, and the Court makes no ruling on their veracity.

and other insects throughout the neighborhood, impacting the Plaintiffs' homes and properties.

Plaintiffs allege that Norfolk Southern's continued operations in staging and storing the odor-emitting railcars within the Parrish neighborhood created a continuing nuisance and trespass to Plaintiffs' persons, homes, and properties. In addition, Plaintiffs allege that Norfolk Southern's actions were a negligent and wanton breach of their duty of care to Plaintiffs that directly and proximately caused Plaintiffs' injuries. Further, it is alleged that the Defendants conspired together in committing the wrongful actions which have harmed the Plaintiffs.

## II.   Standard of Review

A defendant may move for the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. In considering a motion to dismiss, "all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). In addition, when evaluating a motion to dismiss all "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss, a plaintiff must meet the pleading requirements established by Federal Rule of Civil Procedure 8. Rule 8 requires that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the complaint must "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Put another way the complaint "must be dismissed" unless the plaintiff has "nudged [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

The Supreme Court established in *Iqbal* a two-step process for evaluating whether a complaint has met this requirement. The Court must "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

Ultimately, the Court must be able to draw a reasonable inference that the other party is liable from the facts alleged within the complaint. *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012).

### III. Discussion

Norfolk Southern seeks to dismiss the state law claims made against it, arguing that these claims are expressly preempted by the ICCTA.

### a. Federal Preemption

The basis for federal preemption is found within the Supremacy Clause of Article IV of the United States Constitution, which provides that the laws of the United States, "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2. When the Court evaluates preemption, it begins with the assumption that federal laws do not supersede the police powers of the states unless preemption is the "clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). As a consequence, "[t]he purpose of Congress is the ultimate touchstone" when evaluating preemption. *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 103 (1963).

There are three types of federal preemption recognized by the Supreme Court: (1) express preemption; (2) field preemption; and (3) conflict preemption.

*This That & The Other Gift & Tobacco, Inc. v. Cobb Cty.*, 285 F.3d 1319, 1322 (11th Cir. 2002). Express preemption occurs when Congress's intent to preempt state law is stated explicitly within the statutory text. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). If Congress's intent to preempt state law is not explicitly stated in the statute, it may still be inferred when federal regulation is so pervasive that it has left no room for the states to supplement it— this is known as field preemption. *Id.* at 79. The final form of preemption, conflict preemption, generally arises when it is either impossible to follow both state and federal law or when state law impedes the objectives of federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000).

### b. The Interstate Commerce Commission Termination Act of 1995 (ICCTA)

The ICCTA abolished the Interstate Commerce Commission and created the Surface Transportation Board (STB). Regarding the STB's jurisdiction, the ICCTA states in pertinent part:

> **The jurisdiction of the [Surface Transportation] Board over . . . transportation by rail carriers . . . is exclusive.** Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b). Further, transportation is defined broadly as:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, **storage**, handling, and interchange **of passengers and property**[.]

49 U.S.C. § 10102(9) (emphasis added).

The Eleventh Circuit first examined the issue of ICCTA preemption in *Florida East Coast Ry. Co. v. City of West Palm Beach*, 266 F.3d 1324 (11th Cir. 2001). There, the court examined whether the City of West Palm Beach's zoning ordinances were preempted by the ICCTA when applied to a company that operated its business on land leased from Florida East Coast Railway. The court held that the ordinances were not preempted by the ICCTA because "existing zoning ordinances of general applicability, which are enforced against a private entity leasing property from a railroad for non-rail transportation purposes, are not sufficiently linked to rules governing the operation of the railroad so as to constitute laws with respect to regulation of rail transportation." *Id.* at 1331 (citation omitted). The court based this holding on two key factors: (1) the ICCTA's scope of preemption is limited to "Federal and State law," not municipal ordinances, and (2) the ICCTA only expressly preempts "those state laws that may reasonably be said to have the effect of "manag[ing]" or "govern[ing]" rail transportation." *Id.*

The Eleventh Circuit next examined ICCTA preemption in *Pace v. CSX Transp., Inc.*, 613 F.3d 1066 (11th Cir. 2010). In *Pace*, property owners brought a state law nuisance claim against CSX Transportation for its operation of a newly constructed side track. The property owners claimed that CSX's use of the track caused an increase in noise and smoke on their properties which made their land virtually unusable. The court held that the property owner's state law claims were expressly preempted by the ICCTA. *Id.* at 1070. The court reasoned that "to permit monetary liability to accrue under a state law nuisance claim where that liability is based on decisions the ICCTA purposefully freed from outside regulation would contradict the language and purpose of the ICCTA." *Id.*

### c. Application to the Facts at Hand

Here, Plaintiffs assert state law claims of nuisance, trespass, negligence, wantonness, and conspiracy against Norfolk Southern. These claims arise out of Norfolk Southern's alleged staging and storing of railcars which emit a thick, strong, and obnoxious odor within the Parrish neighborhood where Plaintiffs reside. These claims are distinguishable from those in *Florida East Coast Ry.*, as they arise under state law rather than municipal ordinances. In addition, Plaintiffs' claims target the common carrier railroad directly, rather than a private entity operating on lands owned by the railroad.

Thus, the question before the Court is whether Norfolk Southern's choice to store the odor-emitting railcars within the Parrish neighborhood was a decision that the ICCTA "freed from outside regulation." *See Pace*, 613 F.3d at 1070. As with decisions concerning the "operation of side tracks," decisions concerning the "storage" of property by railroads also falls within the scope of decisions freed from outside regulation. The ICCTA expressly grants the Surface Transportation Board exclusive jurisdiction over "transportation by rail carriers." 49 U.S.C. § 10501(b). "Transportation" includes "storage" related to the movement of passengers and property. 49 U.S.C. § 10102(9)(B). Accordingly, the ICCTA expressly grants exclusive jurisdiction to the STB over a railroad's decisions concerning storage related to the movement of property. Plaintiffs argue that the present case is distinguishable from *Pace* in that it concerns the parking of trains at a given location rather than the "movement, running or operation" of trains. (Doc. 18.) But their argument fails to address Congress's inclusion of "storage" within its definition for "transportation." Further, the ICCTA explicitly limits remedies for such matters to those provided within the statute. 49 U.S.C. § 10501(b). As such, Plaintiffs' state law claims against Norfolk Southern are expressly preempted by the ICCTA. *Cf. Norfolk S. Ry. Co. v. Goldthwaite*, 176 So. 3d 1209, 1213 (Ala. 2015) (holding that the

ICCTA preempted a state law nuisance claim arising from the use of railroad tracks as a storage area near the plaintiff's home).

## IV. Conclusion

For the reasons stated above, Norfolk Southern's Motion to Dismiss (doc. 5) is due to be GRANTED, and the claims against Norfolk Southern are due to be DISMISSED WITHOUT PREJUDICE so they can be asserted in the proper venue. An Order consistent with this opinion will be entered.

**DONE** and **ORDERED** on August 4, 2020.

L. Scott Coogler
United States District Judge

199335